UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DIANE D.,                          Case No. 3:23-cv-00179-AR

        Plaintiff,                      OPINION AND ORDER

v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

---

**ARMISTEAD, Magistrate Judge**

      In this judicial review of the Commissioner's final decision denying Social Security benefits, plaintiff Diane D. (her last name omitted for privacy) challenges the Administrative Law Judge's findings that omit discussion of her urinary incontinence at step two, fail to identify specific, clear and convincing reasons for discounting her subjective symptom testimony, and determine that the medical opinion of Dr. Yussuf Mathai, M.D., is unpersuasive. Because the

Page 1 – OPINION AND ORDER

court concludes that the ALJ erred, the Commissioner's decision is reversed and remanded for further proceedings.[1]

## ALJ'S DECISION

Plaintiff applied for Title II Disability Insurance Benefits (DIB) and Title XVI Supplemental Security Income (SSI) on December 7, 2018, and January 28, 2019, respectively, alleging disability beginning on August 1, 2017. (Tr. 233, 238.) Her claims were initially denied on June 26, 2019, and again upon reconsideration on January 22, 2021. (Tr. 69, 82, 105-06, 127-28.) Afterwards, plaintiff filed for a hearing that was held before the ALJ on November 15, 2021. (Tr. 30.)

In denying plaintiff's applications for DIB and SSI, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined that plaintiff meets the insured status requirements through September 30, 2024, and that plaintiff engaged in substantial gainful activity in 2018 and 2019, but not in 2017, 2020, and 2021. (Tr. 16-17.) At step two, the ALJ determined that she had the following severe impairments: Fuch's dystrophy, obesity, and mild osteoarthritis of the left hand. (Tr. 17.) At step three, the ALJ determined that her impairments singly or in combination did not meet or medically equal the severity of any listed impairment.

---

[1] This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2] To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. §§ 404.1545, 416.945, the ALJ determined that plaintiff has the RFC to perform light work with the following nonexertional limitations: occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; frequently stoop, occasionally knee, crouch, and crawl; frequently handle, finger, and feel with the left upper extremity; no concentrated exposure to airborne irritants; no concentrated exposure to hazards due to vision difficulties, but is able to avoid normal obstacles at the job such as boxes on the floor or doors being ajar. (Tr. 19.)

At step four, the ALJ determined that can perform past relevant work as a technical writer and a clerk/typist as it is actually and generally performed (Tr. 22-23.) With RFC in hand, the ALJ found at step five that plaintiff could perform her past relevant work as a technical writer and clerk/typist. (Tr. 22.) Because plaintiff could perform her past relevant work, the ALJ did not make alternative step five findings. (Tr. 23.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

**DISCUSSION**

A.  *Step Two – Plaintiff's Urinary Incontinence*

At step two, a claimant is not disabled if the claimant does not have any medically severe impairments. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe if it "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a). An impairment is not severe "when [the] medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Social Security Ruling (SSR) 85-28, *available at* 1985 WL 56856, at *3. Even if an impairment is not severe, the ALJ must still consider its limiting effect when formulating the claimant's RFC. *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014).

The ALJ found that plaintiff had multiple severe impairments at step two but did not discuss her urinary incontinence. (Tr. 17-19.) Plaintiff argues that the ALJ erred by failing to make any determination about her urinary incontinence – severe, non-severe, or even medically determinable. In failing to do so, plaintiff argues, the ALJ erred at step two and compounded this error by failing to consider the limiting effects of her urinary incontinence when formulating her RFC. (Pl.'s Br. 3-9, ECF 11.)

The Commissioner responds that there is no error because plaintiff failed to establish that her urinary incontinence is a medically determinable impairment. (Def's. Br. 3, ECF 13.) The Commissioner further asserts that even if plaintiff's urinary incontinence is medically determinable, the ALJ did not err because step two was decided in her favor and she has not

established it would result in a difference outcome. (Def.'s Br. 4-5, ECF 13.) The court agrees with the Commissioner's second argument.³

"Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)). Whether an impairment is designated as a severe or non-severe, the ALJ must consider limitations and restrictions imposed by all an individual's impairments when formulating the RFC. SSR 96-8p. As the Commissioner correctly contends, step two was resolved in plaintiff's favor because the ALJ continued with the sequential analysis and any error at step two was harmless. *Buck*, 869 F.3d at 1049 (describing step two errors as harmless if an ALJ decides it in claimant's favor).

To the extent that plaintiff contends the ALJ erred by failing to consider any functional limitations from her urinary incontinence when formulating her RFC, the court addresses that argument below.

**B.    *Basis for Discounting Plaintiff's Testimony***

Determining the credibility of a claimant's testimony regarding subjective reports of pain or symptoms requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). At the first stage, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014);

---

³    The ALJ did not decide that plaintiff's urinary incontinence was not medically determinable, and the court will not make that determination in the first instance. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (holding the court is "constrained to review the reasons the ALJ asserts").

Page 5  – OPINION AND ORDER

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 416.929. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo v. Berryhill*, 871 F.3d 664, 678-79 (9th Cir. 2017).

Plaintiff contends that she cannot engage in full-time, competitive employment because of her physical health conditions, including borderline diabetes, obesity, heart murmur, tremor in her right hand, grip issues, and her eye condition, known as Fuch's dystrophy. (Tr. 265.) Due to the loss of grip strength in her left hand and Fuch's dystrophy, plaintiff alleges she cannot use buttons on clothes unless they are large, cannot tie shoelaces, cannot use nail clippers, and sometimes has difficulty seeing. (Tr. 276, 278.) Plaintiff also alleges that she has limited mobility due to sore knees and that she is unable to climb stairs. (Tr. 276.) She also alleges that she is unable to walk for more than five to 10 minutes unless she has something to lean on, such as a cart while grocery shopping; she is unable to stand for more than 10 minutes; she has some degree of carpal tunnel; and that doing laundry and ironing take between four and six hours each. (Tr. 276, 279, 281, 283.) She is not taking any medication to manage her conditions. (Tr. 282.)

At the hearing, plaintiff testified that she is better suited for part-time work because she can only "handle the keyboard for so long, and then I need a break from it." (Tr. 40.) She said her knees hurt whenever she is sitting, standing, or trying to move around, making things uncomfortable. (Tr. 40.) She further testified to having tremors in both hands, more so on the left than right, that her left hand has decreased sensation, and that she cannot pick up a paper clip,

use buttons on her clothing, or tie shoelaces. (Tr. 41-42.) She also explained that the tendons in her thumbs get overworked and build up callouses, which were successfully treated with cortisone shots. (Tr. 41.)

When asked to elaborate about her hand issues, she testified that the thumb, index, and middle fingers of her left hand are numb, and she can never really feel them. (Tr. 43.) She explained that she can continuously use her hands for 45 minutes to one hour before needing to take a break and walk around before returning. (Tr. 47.) When asked about her vision, plaintiff stated that after her cornea surgery, she still wears glasses, but her vision is "all good." (Tr. 45.)

The ALJ discounted plaintiff's subjective symptom testimony because her statements were inconsistent with her medical records, and because she improved with treatment.

1. **Treatment**

A claimant's favorable response to treatment can undermine their subjective symptom testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). In assessing a claimant's subjective symptom testimony, an ALJ properly may rely on a lack of treatment, or an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (internal quotation marks and citation omitted).

The ALJ discounted plaintiff's subjective symptom testimony because her Fuch's dystrophy was resolved with treatment, and because she sought only minimal treatment for her other reported impairments. (Tr. 20.) As support for this conclusion, the ALJ pointed to plaintiff's records from October 2019, when her Fuch's dystrophy began affecting her daily life; reports from May and September 2020, describing hersurgery on both eyes; and records from

July 2021, in which plaintiff reported her vision was stable and had no complaints. (Tr. 20, citing Tr. 461, 492, 529, 626.) Plaintiff also complained of knee pain in her testimony and in her function report, but as the ALJ noted, she never sought treatment. (Tr. 21.) Plaintiff further complained of weakness and tremors in her hands, more on the left, but the weakness could not be reproduced with repetitive activity, with only mild tremors were noted. (Tr. 21, citing Tr. 550-51.) The ALJ also discussed that plaintiff hed reduced grip strength in both hands, yet she was able to grasp, shake hands, write, and pick up a coin and cup with her right hand, with some difficulty with her left, and that sensory function was intact. (Tr. 596.)

The ALJ's findings are supported by substantial evidence, are a reasonable interpretation of the record, and therefore, provide a clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 2. Inconsistent Statements

Inconsistency with the medical record can provide a clear and convincing basis for discounting a claimant's symptoms, so long as it is not the sole reason for doing so. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

The ALJ discounted plaintiff's subjective symptom testimony because her reported extreme physical limitations, including hand weakness, inability to stand for more than five minutes, and inability to navigate stairs and curbs, are inconsistent with the medical record.   . (Tr. 20-21.) According to plaintiff's function report and hearing testimony, she is unable to use buttons on her clothes, unable to tie shoelaces, unable to use a keyboard for more than 45 minutes to one hour at a time, cannot pick up a paperclip, cannot walk or stand for more than

five to ten minutes unless she can lean on something, and is unable to climb stairs. (Tr. 40-43, 47, 276, 278, 281, 283.)

The ALJ identified contradictory instances between plaintiff's testimony and her medical records. Specifically, the ALJ found that plaintiff's medical records from June 2019 demonstrated she was able to reach, hold, grasp, grip, rotate, pinch, and manipulate large and small objects with either hand without tremor or spasticity, her gait was normal, and no assistive devices were used or needed. (Tr. 21, citing Tr 452.) In February 2020, plaintiff stated she could walk and perform all activities of daily living, was taking no medication, had no shortness of breath, only complaining of urinary incontinence. (Tr. 479.) In December 2020, plaintiff continued complaining of left-hand weakness and tremors but no knee pain or mobility issues. (Tr. 550.) While mild tremors were noted, there was no noticeable weakness and plaintiff declined to have her hand fully evaluated until after she obtained a disability determination. (Tr. 550-51.) In late December 2020, plaintiff underwent a neurological exam, where she demonstrated normal 5/5 strength in her upper and lower extremities with decreased grip strength in her right and left hands, 4/5 and 3/5 respectively. (Tr. 596.) Despite the decreased grip strength, repetitive activity did not cause significant, reproducible muscle weakness, and she was able to grasp, shake hands, write, pick up a coin and a cup, with only some difficulty in her left hand. (Tr. 21, citing Tr. 596.) Plaintiff was also noted as having a slow, waddling gait, and stabilized herself by reaching out for the walls and furniture. (Tr. 597.)

Based on the above, the ALJ identified specific instances where plaintiff's allegations of significant limitations are undermined by the medical evidence in the record. Because the ALJ's

findings are supported by substantial evidence and are a reasonable interpretation of the record, the ALJ did not err in discounting plaintiff's testimony.

**C.**     *Evaluating the Medical Opinion of Yusuf Mathai, M.D.*

For disability claims filed on or after March 27, 2017, new regulations for evaluation medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinions. *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ also may consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* §§ 404.1520c(c)(3),

416.920c(c)(3). An ALJ is not, however, required to explain how they considered those secondary medical factors unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* §§ 404.1520c(c)(b), 416.920c(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").[4] *Id.*

In assessing plaintiff's RFC, the ALJ found unpersuasive the medical opinion of Dr. Mathai, plaintiff's consultative examiner, because his assessment was inconsistent with plaintiff's other treatment records and her activities of daily living. (Tr. 22.)

Plaintiff asserts that the ALJ improperly discredited Dr. Mathai's opinion due to a lack of treatment records supporting the ALJ's opinion, improperly using plaintiff's activities of daily living, and because Dr. Mathai's opinion is supported by his own observations during the exam. (Pl.'s. Br. 11-13, ECF 11.)[5] The Commissioner argues that not only does substantial evidence

---

[4] Under the new framework, the ALJ is no longer required to "provide specific and legitimate reasons for rejecting an examining doctor's opinion;" rather, the ALJ's reasons must "simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

[5] Plaintiff also argued that medical records reflecting an examination done by Dr. Ellison were too remote in time. (Pl.'s Br. 13, ECF 11.) The court declines to acknowledge the argument for two reasons: (1) the argument is undeveloped; and (2) Dr. Ellison's evaluation took place

Page 11 – OPINION AND ORDER

cited by the ALJ support the ALJ's finding, but also that plaintiff's activities of daily living are inconsistent with the limitations described by Dr. Mathai. (Def.'s Br. 6-7, ECF 13.)

The court agrees with the Commissioner: the ALJ's findings are supported by substantial evidence and are sufficient explanations for discounting Dr. Mathai's opinion.

Dr. Mathai met with plaintiff for a consultative examination on December 26, 2020. (Tr. 594.) According to Dr. Mathai, plaintiff had no limitations in sitting, could only stand occasionally, could only walk occasionally due to claimant's self-report, could only occasionally lift and carry 10 pounds with both hands together due to knee pain and left-hand weakness, and could occasionally bend and stoop due to instability in balance, bilateral knee pain, and body habitus. (Tr. 599-600.) The ALJ found that Dr. Mathai's opinion is inconsistent with plaintiff's other treatment records. (Tr. 22.) The ALJ also noted that plaintiff endorsed no difficulties in attending to her activities of daily living, including using a phone/computer, cooking, doing laundry, washing dishes, driving, shopping, vacuuming, and sweeping, and that those activities were inconsistent with her presentation at Dr. Mathai's evaluation. (Tr. 22, citing Tr. 620.)

The ALJ's findings and rationale are supported by substantial evidence in the record. The ALJ's cited records showing that the upper extremity weakness observed by Dr. Mathai was unobservable just two weeks prior, and that she did not want a proper work up until after she saw Dr. Mathai. (Tr. 550.) Other records prior to Dr. Mathai's evaluation directly contradict Dr. Mathai's findings, showing that plaintiff was able to reach, hold, grasp, grip, rotate, pinch, and manipulate large and small objects with either hand without tremor or spasticity, and that her strength and muscle bulk and tone were normal throughout with no sensory loss. (Tr. 450, 452.)

---

during the relevant period, making it relevant medical evidence.

That same record also indicated plaintiff was capable of lifting and carrying up to 20 pounds. (Tr. 452.) Dr. Mathai indicated that although there was some diminished grip strength, repetitive activity did not cause significant, reproducible muscle weakness. (Tr. 596.) As the ALJ noted, records reveal that plaintiff did not complain of knee pain or display significant mobility issues until meeting with Dr. Mathai, where she that her knee pain had been getting worse for at least a year, yet she failed to discuss it with her primary care physician just two weeks earlier. (Tr. 22, citing Tr. 594.) The only other record evaluating plaintiff's mobility and knee pain came from an evaluation done on June 8, 2019, where plaintiff made no mention of any pain or gait issues, and had a normal gait upon examination, Romberg and tandem walking were steady, and she was unable to walk on heels or toes. (Tr. 452.) Although Dr. Mathai observed that plaintiff has an antalgic gait, favors her right leg, drags her left leg, that she has a slow waddling gait, and did not need an assistive device, the ALJ limited plaintiff to less than occasional standing and walking, indicating that plaintiff is able to do more than her reported inability to stand or walk for five to ten minutes. (Tr. 597, 599-60.)

Given the ALJ's cited reasoning and the sparse evidence present in plaintiff's treatment records, the ALJ's determination that Dr. Mathai's medical opinion is unpersuasive due to its inconsistency with the other medical evidence in the record is supported by substantial evidence.[6] Therefore, the ALJ reasonably concluded Dr. Mathai's assessment was unpersuasive;

---

[6] The ALJ's reasoning regarding plaintiff's activities of daily living is unsupported by substantial evidence. The ALJ does not provide any explanation as to why her activities of daily living would discount Dr. Mathai's medical opinion. However, this error is harmless because the ALJ's reasoning that Dr. Mathai's medical opinion was inconsistent with other medical records is a reasonable interpretation of the record.

the ALJ did not err in evaluating Dr. Mathai's opinion.

**D.**     *Plaintiff's RFC*

In determining the Plaintiff's RFC, an ALJ must consider all relevant evidence in the record. *See* SSR 96-8p; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Plaintiff testified that she has had trouble with incontinence for the past four or five years to the point that she needs to be close to a restroom. (Tr. 53.) Plaintiff's records also indicate that she repeatedly complained of incontinence, wears pads to help with her condition, and that a diagnosis of polyuria was made based on her complaints. (Tr. 451, 478, 549–51, 553, 594.) The ALJ did not, however, discuss plaintiff's complaints of urinary incontinence at any point in the decision.

Plaintiff argues that the ALJ erred by not taking her urinary incontinence into account when formulating her RFC. (Pl.'s Br. 3-9, ECF 11.) Needing to be close to a restroom, needing constant restroom breaks, and dealing with any accidents that occur when she is unable to reach a restroom in time, in plaintiff's view, would necessarily result in a different RFC. (Pl'.s Br. 7-8.) The Commissioner argues that urinary incontinence is not a medically determinable impairment because impairments cannot be established by subjective complaints alone, and even if her urinary incontinence were an MDI, plaintiff has not shown such a determination would result in a different RFC. (Def's. Br. 3-5.) The court agrees with plaintiff here.

Urinary incontinence may result in a different RFC if plaintiff required close proximity to a restroom and if frequent restroom breaks would increase the amount of time plaintiff was off-task in an eight-hour workday. Even if Commissioner's interpretation is reasonable, the ALJ did not provide this rationale within the decision, and the court cannot consider this *post hoc* rationalization in the first instance. *See Bray*, 554 F.3d at 1225; *see also Ferguson v. O'Malley*,

No. 21-35412, ___ F.4th ___, (9th Cir. Mar. 14, 2024) (holding ALJ erred by failing to identify specific evidence that discounted claimant's allegations about his headaches, and rejecting Commissioner's argument, asserted on appeal in the first instance, that claimant failed to establish that his headaches were a medically determinable impairment).

As discussed above, the ALJ does not explain why plaintiff's urinary incontinence functional limitations were not included in plaintiff's RFC, and her urinary incontinence was not taken into account at any point in the ALJ's evaluation. Although an ALJ is not required to discuss all evidence in the medical record, an ALJ "must explain why significant probative evidence has been rejected." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022) (quoting *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). The limitations with urinary incontinence may result in a different RFC and no hypothetical including those limitations was provided to the vocational expert. Accordingly, the vocational expert's testimony regarding plaintiff's ability to perform past relevant work is incomplete, and the ALJ has erred. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)

In sum, the ALJ did not err in their step two evaluation, discounting the plaintiff's subjective symptom testimony, and Dr. Mathai's medical opinion. However, the ALJ erred in evaluating the plaintiff's RFC by not discussing her urinary incontinence and providing reasons for discounting it that are backed by substantial evidence, or including it in the RFC.

**E.     *Remedy***

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). Whether an action is remanded for an award of benefits or for further

proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under that analysis, the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

      Plaintiff argues that she merits an award for an immediate payment of benefits or further proceedings because the ALJ failed to incorporate plaintiff's urinary incontinence into her RFC. Remand for further proceedings is the appropriate remedy here. As discussed above, the ALJ erred only with respect to a failure to incorporate plaintiff's urinary incontinence limitations into the resulting RFC. As such, the issue of plaintiff's RFC remains unresolved. *Taylor v. Berryhill*, 729 F. App'x 906, 907 (9th Cir. 2018) ("Remand for further proceedings is proper because outstanding issues in the record remain that must be resolved before a determination of disability can be made.) Such an error is "not inconsequential to the ultimate nondisability determination." *See Treichler v. Comm'n Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

      On remand, the ALJ shall reevaluate plaintiff's urinary incontinence and either incorporate that testimony and its limitations into the RFC or provide adequate reasoning as to why those limitations are rejected. As warranted, the ALJ will reevaluate plaintiff's RFC and

obtain supplemental VE evidence if necessary. *Garrison*, 759 F.3d at 1019 (stating remand is appropriate where "additional proceedings can remedy defects in the original administrative proceeding").

## CONCLUSION

For the above reasons, the court AFFIRMS in part and REVERSES and REMANDS in part the Commissioner's final decision for further proceedings.

ORDERED on March 18, 2024.

_____
JEFF ARMISTEAD
United States Magistrate Judge